CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 3 0 2012

JULIA C. DUDLEY, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Action No. 7:10CR00050 |
| | Civil Action No. 7:12CV80441 |
| v. | |
| | **MEMORANDUM OPINION** |
| MARIA DE JESUS HERNANDEZ-SALAZAR, | By: Hon. Glen E. Conrad |
| | Chief United States District Judge |
| Defendant. | |

Maria De Jesus Hernandez-Salazar ("Hernandez"), a federal inmate proceeding pro se, filed this action as a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. The government has filed a motion to dismiss to which Hernandez has responded, making the matter ripe for disposition. For the reasons that follow, the government's motion to dismiss will be granted and Hernandez's motion to vacate will be denied.

## Background

On August 19, 2010, Hernandez and two co-defendants were charged in an indictment returned by a grand jury in the Western District of Virginia. Count One alleged that, from a time unknown to the grand jury until on or about July 21, 2010, the defendants conspired to distribute more than five hundred grams of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 846.

On February 23, 2011, Hernandez entered a plea of guilty to Count One of the indictment, pursuant to a written plea agreement. By signing the agreement, Hernandez certified that she was pleading guilty because she was, in fact, guilty of the offense charged and not because of any threats or promises; that she had discussed the plea agreement and all other matters pertaining to

the indictment with her attorney; and that she was fully satisfied with her attorney and the attorney's advice. (Plea Ag. at 2, 10.) Under the terms of the plea agreement, Hernandez stipulated that she was subject to a base offense level of 36 under § 2D1.1 of the United States Sentencing Guidelines, the level applicable to offenses involving at least five but less than fifteen kilograms of methamphetamine. Hernandez also agreed to waive her right to file a direct appeal "on any ground," and to "waive any right [she] may have to collaterally attack, in any future proceeding, any order issued in this matter . . . ." (Id. at 7-8.)

During the plea hearing conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the court established that Hernandez possessed the capacity to make a voluntary, intelligent, and informed plea. In response to questions from the court, Hernandez stated under oath that she was able to read and write in the English language; that she was not suffering from a physical or mental problem that would impair her ability to understand or participate fully in the proceeding; and that she was not under the influence of any drugs or intoxicants that would affect her reasoning, comprehension, or communication skills. (Plea Hearing Tr. at 6-7.) The court also established that Hernandez understood the charge to which she was pleading guilty, as well as the purpose of the Rule 11 proceeding. (Id. at 8-11.)

The court instructed the prosecutor to review the salient portions of the plea agreement that Hernandez had reached with the government. In response, the prosecutor outlined several sections of the plea agreement, including the section summarizing the potential penalties that Hernandez faced upon conviction. (Id. at 9.) The prosecutor also explained the elements of the conspiracy offense with which the defendant was charged, and noted that the defendant had stipulated that she should be held responsible for between five and fifteen kilograms of

2

methamphetamine. (Id. at 9-10.) Upon being asked if the prosecutor's summary of the plea agreement was consistent with her own understanding of the agreement, Hernandez responded in the affirmative. (Id. at 11.)

The court then inquired as to whether Hernandez was voluntarily pleading guilty. In response to questions from the court, Hernandez affirmed that no one had made any promises or representations regarding the disposition of the case other than those set forth in the plea agreement, and that no one had attempted to coerce or force her to plead guilty. (Id. at 11.) Hernandez likewise affirmed that she was pleading guilty "based on [her] own free will and [her] own determination of what's best for [her]," and because a plea of guilty was "consistent with the facts." (Id. at 12.) Specifically, the defendant acknowledged that she was "in fact guilty of this conspiracy to distribute methamphetamine." (Id. at 12.)

The court subsequently reviewed the constitutional rights that Hernandez would waive if she entered a plea of guilty. Notwithstanding all of the valuable constitutional rights that she would waive by pleading guilty, and the fact that the offense with which she was charged carried a mandatory term of imprisonment of ten years to life under 21 U.S.C. § 841(b)(1)(A), Hernandez stated that she still wished to enter a plea of guilty. (Id. at 31.)

The court asked Hernandez to explain, in her own words, what she had done that made her believe that she was guilty of the offense with which she was charged. After speaking with her attorney during a brief recess, Hernandez explained that she "helped" co-defendant Juan Cabello-Barrera by meeting the people who came to their house to buy methamphetamine, and by taking money from them with the understanding that they would be given methamphetamine by her co-defendant. (Id. at 34.) Hernandez estimated that this occurred ten or fifteen times, and

3

that she handled amounts of money as large as $12,000.00. Hernandez also testified that she knew who was supplying Cabello-Barrera with methamphetamine, and that she knew the people to whom the methamphetamine was being sold. (Id. at 35.) Hernandez ultimately confirmed that she was confident that she was "criminally responsible for this conspiracy to distribute methamphetamine." (Id. at 37.) Likewise, the defendant acknowledged that she and Cabello-Barrera were responsible for at least five kilograms of methamphetamine, as stipulated in her plea agreement. (Id. at 36.)

The court then called upon the prosecutor to present any evidence that would support Hernandez's plea of guilty. Proceeding by proffer, the prosecutor summarized the government's evidence as follows:

> Your honor, the events in this case occurred up through the 21st of July of 2010, last year, in Carroll County, in the Western District of Virginia.
>
> Part of the investigation involved a controlled purchase of a pound of methamphetamine from co-defendant Juan Barrera-Cabello. Ms. Hernandez was present during that, as reported by the informant. This then resulted in a search warrant on that residence. Ms. Hernandez was advised of her rights under Miranda,[1] agreed that since she and Barrera-Cabello moved to Fries, they had been in the methamphetamine business.
>
> The statement taken from her suggests a certain level of joint activity. She identified their source of supply, suggested that they had gone there or the suppliers had come to their place many times over the past eight months. Thousands of dollars of methamphetamine were purchased from these suppliers. She said that she and Barrera-Cabello made $500 a week in profit off of their methamphetamine business; that co-defendant Barrera was getting what would have been pounds, for $11,000 and then selling it for $12,000, by and large.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

4

> Admitted further that they were the suppliers for co-defendant Blevins; that they had sold to him on at least five occasions and she, in fact, collected money when he came back around to pay. Identified his picture and this, by the way, matches what Blevins would have testified to if called [as a witness].
>
> She also admitted to ongoing dealings with Donald Vaughn. That was the person used as the confidential informant for the controlled purchase earlier.
>
> All of the information was that she was present when deals were done or in fact was the one that took the money when the deals were done.
>
> This is Ms. Hernandez.

(Id. at 38-39).

The court subsequently inquired as to whether the prosecutor's summary of the evidence was consistent with Hernandez's understanding as to what the evidence in the case would have been if the matter had gone forward to trial. Hernandez responded in the affirmative. (Id. at 40). In response to further questions from the court, Hernandez confirmed that the proffer "properly summarize[d]" her level of involvement in the conspiracy, and that she had "no hesitation whatsoever." (Id. at 40.)

At the conclusion of the hearing, the court asked the defendant whether she was satisfied with her attorney's representation, and whether she had any questions regarding anything that had been said during the hearing. Hernandez indicated that she was satisfied with the services provided by her attorney, and that she did not have any questions for the court. (Id. at 41-42.)

The court conducted Hernandez's sentencing hearing on June 1, 2011. During the hearing, the court adopted the presentence report prepared by the United States Probation Office, which applied a base offense level of 36, as stipulated in the defendant's plea agreement. The

5

court found that Hernandez was entitled to the benefit of the safety valve provisions, and ultimately sentenced her to a term of imprisonment of 108 months. See 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2.

On May 25, 2012, Hernandez filed the instant motion to vacate pursuant to 28 U.S.C. § 2255. The government has moved to dismiss the motion, arguing that it is barred by the waiver of collateral attack rights contained in the plea agreement, and that it is without merit. The defendant filed a response to the motion on September 10, 2012. The matter is now ripe for review.

## Discussion

In moving to vacate her conviction and sentence, Hernandez asserts two claims of ineffective assistance of counsel. Specifically, Hernandez alleges that her counsel provided ineffective assistance by coercing her to sign the plea agreement, and by failing to "request for the 'mixture' of methamphetamine to be separated to get the actual weight of the pure substance." (§ 2255 Mot. at 6.) For the following reasons, the court concludes that each of the defendant's claims is without merit.[2]

Claims of ineffective assistance are reviewed under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). To succeed on a claim of ineffective assistance, a defendant must demonstrate "that counsel's performance was deficient," and that "the deficient performance prejudiced the defense." Id. at 687. To demonstrate deficient performance, the defendant "must show that counsel's representation fell below an objective standard of

---

[2] Because the court concludes that the defendant's claims are without merit, the court finds it unnecessary to address the government's alternative argument that the claims are barred by the waiver of collateral-attack rights contained in the defendant's plea agreement.

6

reasonableness" measured by "prevailing professional norms." Id. at 688. To demonstrate prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

I.  **Claim One**

In challenging the effectiveness of her attorney's assistance, Hernandez first claims that her attorney coerced her to plead guilty. To support this claim, Hernandez alleges that her attorney never explained the plea agreement to her, that she "did not know what [she] was signing," and that she "did not understand the real meaning" of the charge to which she pled guilty. (Docket No. 131 at 1.) The defendant also alleges that her attorney told her that she "was guilty because [her] co-defendants had said so," that "the government had lots of evidence" against her, and that she "was going to get much more time" if she went to trial." (Id.)

While Hernandez may now regret her plea of guilty, her claim of coercion is belied by her own responses to the court's inquiries during the Rule 11 hearing. As previously summarized, Hernandez affirmed under oath that no one had attempted to force or compel her to plead guilty; that no one had made any promises in order to induce her plea; and that she was pleading guilty because she was, in fact, guilty of the conspiracy offense charged in the indictment. Hernandez also affirmed that she understood the charge to which she was pleading guilty; the constitutional rights that she would waive by entering a plea of guilty; and the potential range of punishment. She summarized her role in the charged conspiracy to distribute methamphetamine, and confirmed, "without hesitation," that the government's proffer properly outlined her involvement in the conspiracy. (Plea Hearing Tr. at 38-39.) At the conclusion of the hearing, Hernandez

7

Case 7:10-cr-00050-GEC-RSB Document 132 Filed 10/30/12 Page 7 of 10 Pageid#: 700

indicated that she did not have any questions about any aspect of her case, and that she was satisfied with the representation provided by her attorney.

Hernandez has not offered any evidence that would undermine her sworn statements regarding the voluntariness of her guilty plea or the sufficiency of her attorney's representation. Consequently, Hernandez is bound by the statements that she made during the Rule 11 hearing, and her current allegations to the contrary must be rejected. See Fields v. Atty. Gen. of Md., 956 F.2d 1290, 1299 (4th Cir. 1992) ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy.") (citing Blackledge v. Allison, 431 U.S. 63, 74-75 (1977)); see also United States v. Lemaster, 403 F.3d 216, 221-222 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during the Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements."). Accordingly, the defendant cannot satisfy either prong of the Strickland test, and her claim that counsel was ineffective for coercing her to plead guilty must be dismissed.

## II.   Claim Two

Hernandez also claims that her attorney rendered ineffective assistance by failing to "request for the 'mixture' of methamphetamine to be separated to get the actual weight of the pure substance." (§ 2255 Mot. at 6.) For the following reasons, the court concludes that this claim is also without merit.

Hernandez was charged with conspiracy to distribute more than 500 grams of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A),

8

and 846. In her plea agreement with the government, the defendant stipulated that she was responsible for more than five but less than fifteen kilograms of methamphetamine, and, thus, subject to a base offense level of 36 under the Sentencing Guidelines. See U.S.S.G. § 2D1.1(c)(2) (providing a base offense level of 36 for "[a]t least 5 KG but less than 15 KG of Methamphetamine, or at least 500 G but less than 1.5 KG of Methamphetamine (Actual) . . . ."). The court adopted the stipulation and utilized the base offense level to determine an appropriate sentence.

Even assuming that the instant claim is not barred by the stipulation, the claim nonetheless fails on its merits. Section 841(b) of Title 21 "provides for a mandatory minimum sentence based either on the weight of a mixture or substance containing a detectable amount of [methamphetamine], or on lower weights of pure . . . methamphetamine." Chapman v. United States, 500 U.S. 453, 459 (1991) (emphasis in original); see, e.g., 21 U.S.C. § 841(b)(1)(A)(viii) (prescribing a mandatory minimum term of imprisonment of ten years for offenses involving "50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers"). Likewise, "[t]he Sentencing Guidelines' drug quantity table provides two ways of calculating the base offense level for methamphetamine: first, based on the quantity of methamphetamine-containing mixture, and second, based on the quantity of pure methamphetamine in the mixture." United States v. Gigley, 213 F.3d 509, 518-19 (10th Cir. 2000). The Sentencing Guidelines instruct courts to "use the offense level determined by the entire weight of the mixture of substance, or the offense level determined by the weight of the . . . methamphetamine (actual), whichever is greater." U.S.S.G. § 2D1.1(c) n. (B) (emphasis added);

9

see also United States v. Diaz, No. 11-3875, 2012 U.S. App. LEXIS 22271, at *7 (7th Cir. Oct. 26, 2012) (noting that "the Sentencing Commission has directed sentencing courts to apply the offense level corresponding to the weight of actual methamphetamine in a mixture when doing so will yield a higher offense level").

Because § 841(b) of Title 21, and § 2D1.1 of the Sentencing Guidelines, clearly permit a defendant's sentence to be calculated based on the weight of a mixture or substance containing methamphetamine, and since the Sentencing Guidelines direct the court to use the weight of actual methamphetamine only when doing so will produce a higher offense level, Hernandez is unable to establish that her attorney acted unreasonably in failing to request a determination of the amount of actual methamphetamine attributable to the defendant. Likewise, the defendant can show no prejudice resulting from the calculation of the applicable drug weight. Accordingly, Claim Two also fails under Strickland.

## Conclusion

For the reasons stated, the court will grant the government's motion to dismiss and deny Hernandez's motion to vacate. Additionally, because the defendant has failed to demonstrate "a substantial showing of the denial of a constitutional right," the court will deny a certificate of appealability. See 28 U.S.C. § 2253(c).

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the defendant and all counsel of record.

ENTER: This 30th day of October, 2012.

/s/ Glen Conrad
Chief United States District Judge